UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

JOY HOCHSTADT,

                     Plaintiff,

      -against-

NEW YORK CITY DEPARTMENT OF EDUCATION
f/k/a BOARD OF EDUCATION OF THE CITY SCHOOL
DISTRICT OF THE CITY OF NEW YORK;  and
JOEL I. KLEIN, as Chancellor of the CITY SCHOOL
DISTRICT OF THE CITY OF NEW YORK; Dr. ELOISE
MESSINEO, Individually and in her official capacity
as Principal of Louis D. Brandeis High School;
RICHARD WEISS, Individually and in his official
capacity as former Assistant Principal of Louis D.
Brandeis High School; ROBERT NISSEN, Individually
and in his official capacity as Assistant Principal of
Louis D. Brandeis High School; and DONNA
LOPICCOLO, Individually and in her official capacity
as Assistant Principal of Louis D. Brandeis High School,

                     Defendants.

_____

**AMENDED COMPLAINT**

ECF CASE
CASE NO.08CV02420(LTS)

Plaintiff demands a
jury trial

      Plaintiff Joy Hochstadt, by her attorney, James R. Sandner (Wendy M. Star and Damon S.

Levenstien, Of  Counsel), complaining of the defendants, alleges as follows:

<u>NATURE OF THE CASE</u>

1.     This action is brought pursuant to the Age Discrimination in Employment Act as

amended ("ADEA"), 29 U.S.C. §621 *et seq.*, the New York State Human Rights Law

("State Human Rights Law"), New York Executive Law §290 *et seq.*, and the New York

City Human Rights Law ("City Human Rights Law"), Section 8-101 *et seq.* of the New

York City Administrative Code.

116919

2.      In this action, the plaintiff, a public school teacher, seeks declaratory and injunctive relief, and damages, arising from the intentional actions of the defendants in discriminating against her because of her age and in retaliating against her because of her opposition to defendants' acts of age discrimination.

## JURISDICTION AND VENUE

3.      With respect to the federal claims asserted herein, the Court's jurisdiction is invoked pursuant to 28 U.S.C. §§1331 and 1343(a)(3) and (4) for the violation of plaintiff's federal statutory rights.

4.      Plaintiff's claim for declaratory relief is authorized by 28 U.S.C. §§2201 and 2202.

5.      With respect to the state law claims asserted herein, the Court's supplemental jurisdiction is invoked pursuant to 28 U.S.C. §1367(a).

6.      Plaintiff filed the instant complaint within 90 days of receipt of a Notice of Right to Sue letter from the United States Equal Employment Opportunity Commission ("EEOC").

7.      The principle place of business of defendant New York City Department of Education f/k/a Board of Education of the City School District of the City of New York ("Department of Education") is the Tweed Courthouse, 52 Chambers Street, New York, New York, and therefore, venue properly lies in the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. §1391.

## PLAINTIFF

8.      Plaintiff, Joy Hochstadt, is a citizen of the United States and a resident of New York, New York, in New York County.  Plaintiff is 68 years old.

## DEFENDANTS

116919

9.      The Department of Education is empowered to be the governing body of the City School

District of the City of New York ("District") and existing under the laws of the State of

New York, and is subject to the provisions of the ADEA, the State Human Rights Law,

and the City Human Rights Law.  At all times relevant to this action, the Department of

Education has been plaintiff's employer within the meaning of the ADEA, the State

Human Rights Law, and the City Human Rights Law.

10.     Defendant Joel I. Klein is the Chancellor of the District and, as such, is responsible for

the operation of the District and its chief executive officer.

11.     Defendant Doctor Eloise Messineo ("Messineo"), was at all times relevant hereto,

employed by the Department of Education as Principal of Louis D. Brandeis High School

("Brandeis").

12.     Defendant Richard Weiss ("Weiss"), was at all times relevant hereto, employed by the

Department of Education as Assistant Principal of Science at Brandeis up and until on or

about June 2005, at which point, upon information and belief, he transferred to a teaching

position at a different school within the Department of Education.

13.     Defendant Robert Nissen ("Nissen"), was at all times relevant hereto, employed by the

Department of Education as Assistant Principal of Organization at Brandeis.

14.     Defendant Donna LoPiccolo ("LoPiccolo") was employed by the Department of

Education as Assistant Principal of Science at Brandeis on or about September 2005.

116919

<u>FACTUAL ALLEGATIONS</u>

<u>BACKGROUND</u>

15.    For approximately thirty years prior to beginning her career with the Department of Education in September 1997, plaintiff was employed in numerous teaching positions both at the elementary, high school, college, upper graduate level and in-service professional development.

16.    Plaintiff holds New York State teaching licenses in Biology and General Sciences grades 7-12, Chemistry grades 7-12, as well as pre-kindergarten, kindergarten and grades 1-6.

17.    Plaintiff holds New York City teaching licenses in Biology and General Science, Chemistry and General Science, Junior High School General Science, Common Branches, as well as pre-kindergarten.

18.    Plaintiff also holds a New York State School District Administrator license and New York City school administration licenses.

19.    In September 1997, plaintiff began her career with the Department of Education serving as a Certified Provisional Teacher.

20.    In September 1998, plaintiff was appointed by the Department of Education to a probationary teaching position in the area of Biology and General Science.

21.    From September 1997 to in or about February 2000, plaintiff served as a teacher at Lafayette High School ("Lafayette") in Brooklyn, New York.

22.    Plaintiff successfully completed probation and received tenure on or about September 2000.

116919

23.    On or about December 1999, plaintiff requested a transfer for medical reasons to a school closer to her home.

24.    On or about February 2000, plaintiff's request was granted and she received a transfer to Brandeis.

25.    Plaintiff received satisfactory ratings for each Annual Professional Performance Review from September 1997 through June of 2000.

26.    Plaintiff took a leave of absence on or about October 2000 for the remainder of the 2000/2001 school year and for the 2001/2002 and 2003/2004 school years.

<u>SCHOOL YEAR 2004/2005</u>

27.    On or about August 14, 2004, at the age of 65, plaintiff sent a letter to defendant Messineo, the Principal at Brandeis, advising defendant Messineo of her intent to return in September.

28.    When Plaintiff did not receive a response, she went to the Department of Education's Regional Operating Center to inquire as to the status of her duty that September where she was advised by two Department of Education representatives, Alan Weinstein and Min Choi, that the necessary documents for her return to service will be filed on her behalf.

29.    On or about August 30, 2004, after not receiving a response from Mr. Weinstein, Mr. Choi or defendant Messineo concerning her return to service, plaintiff went to Brandeis in order to introduce herself to defendant Messineo and discuss her return to the school.

30.    Plaintiff was ignored by defendant Messineo and defendant Nissen, who upon information and belief had been made responsible for the hiring of staff under Messineo's

116919

general direction, that entire day. Plaintiff therefore returned the next day in attempt to meet with one of them. When defendant Messineo finally walked past plaintiff, plaintiff introduced herself and informed defendant Messineo that she was returning to service in September. In response, defendant Messineo stated "You may have tenure in the system, however, that does not mean you have tenure in this school."

31. Defendant Messineo demanded that plaintiff obtain medical clearance from the Department of Education's medical bureau before allowing her to resume service.

32. Notwithstanding defendant Messineo's dismay that plaintiff would be returning to Brandeis, plaintiff returned to commence her service immediately following Labor Day, after receiving medical clearance from the Department's medical bureau.

33. When plaintiff arrived, defendant Weiss, handed plaintiff her teaching schedule. Upon information and belief, pursuant to his duties as Assistant Principal of Organization, defendant Nissen coordinated the teacher's schedules, under the general direction of defendant Messineo.

34. The schedule first assigned to plaintiff contained two Earth Science classes, one Living Environment class, one Special Education Living Environment class and the laboratory sections for these classes.

35. As an attempt to set plaintiff up to fail from the beginning, plaintiff was assigned Earth Science classes and a Special Education class, notwithstanding that these classes are outside of plaintiff's licensed area and plaintiff had practically no experience teaching Special Education students and had never before taught that Earth Science curriculum.

116919

36.    Upon information and belief, no other teacher was given a schedule consisting of classes primarily outside that teacher's license area.

37.    The following day, defendant Weiss advised plaintiff that he was changing her schedule in that he would teach her laboratory periods and in exchange she would teach an additional Living Environment class.

38.    Prior to this schedule change, plaintiff had four instructional classes culminating in New York State Regents examinations.

39.    With this additional Living Environment class, plaintiff was assigned to teach five total classes culminating in New York State Regents examinations.

40.    Upon information and belief, plaintiff was the only teacher in the science department teaching five classes all of which culminated in a New York State Regents examination.

41.    Additionally, with this change, plaintiff's schedule resulted in having four teaching periods in a row without a break period, a schedule which Weiss conceded by letter dated September 30, 2004 violated the collective bargaining agreement ("CBA") between the Department and the United Federation of Teachers ("UFT"), the union of which plaintiff is a member.

42.    However, two weeks after this schedule change, when speaking with defendant Nissen, before a first period one morning, Nissen asked when her free period was that day so that they could resume their conversation. Plaintiff stated that she would be free fifth period. At this point, upon information and belief, Nissen became aware that plaintiff's schedule had been changed by defendant Weiss, a change which resulted in plaintiff teaching four periods in a row.

116919

43.    Just a few days later, on or about September 22, 2004, plaintiff was thereafter approached by Weiss who advised plaintiff that he was going to again change her schedule. He advised plaintiff that she was to switch classes with teacher Stella Porras, in that plaintiff was to teach Ms. Porras' fifth period Special Education Living Environment class and Ms. Porras would teach plaintiff's third period General Education Living Environment class.

44.    Plaintiff was displeased with receiving a third schedule change within the first three weeks of the school year. She additionally was unhappy in that this change added another special education class to her schedule, notwithstanding that she does not hold a license in Special Education and practically had no experience teaching Special Education students.

45.    Both plaintiff and Ms. Porras signed a letter to the Principal requesting that they remain in their current schedule. In response to this letter, defendant Weiss advised Ms. Porras and plaintiff that he would discuss it with defendant Messineo.

46.    Based on this representation by defendant Weiss, Ms. Porras and plaintiff continued teaching in the schedule they were in and did not switch classes.

47.    On or about September 30, 2004, defendant Weiss disciplined plaintiff by putting a disciplinary letter in her file alleging that she was insubordinate for not complying with the schedule change, notwithstanding his representation that he would speak to defendant Messineo about the change.

48.    Ms. Porras, who was much younger than plaintiff and less senior, was not disciplined for this same incident.

116919

49.    On or about September 28, 2004, just a few weeks into the school year and after another schedule change, defendant Weiss conducted an observation of plaintiff.

50.    Further, defendant Weiss did not conduct a pre-observation conference concerning the September 28, 2004 observation, as is required by the CBA between the Department and the UFT, which Weiss knew or should have known disadvantaged plaintiff in the evaluation process.

51.    When questioned about his failure to hold this conference, defendant Weiss stated that he had been directed by defendant Messineo to conduct observations unannounced.

52.    Defendant Weiss conducted a second observation of plaintiff on or about October 21, 2004.

53.    Defendant Weiss again failed to hold a proper  pre-observation conference with plaintiff. In fact, at the meeting that he purported to be a pre-observation conference, he never discussed or planned a proposed October 21, 2004 lesson, which Weiss knew or should have known disadvantaged plaintiff.

54.    Plaintiff submitted a written rebuttal to defendant Weiss' observation report related to the October 21, 2004 observation.

55.    In order to further sabotage plaintiff using evaluation methods, throughout the entire school year, defendant Weiss conducted daily unannounced "walk-through" observations of plaintiff, memorializing in his notes any slight fault that he may have perceived at the time.

116919

56.     Defendant Messineo would also conduct frequent unannounced "walk-through" observations of plaintiff, observations which were clearly designed to harass and intimidate plaintiff.

57.     Upon information and belief, defendant Messineo did not conduct as many walk-though observations of the younger and less senior teachers' classrooms.

58.     In the Fall semester of 2004, defendant Weiss monitored the hallways on a daily basis and kept a log noting when he believed teachers had arrived late to class. However, it became clear to many of the teachers that defendant Weiss was in error as to when the first bell of the school day rang and consequently, his conclusions as to who was late were inaccurate. Eventually, teachers complained to defendant Nissen about Weiss' error and practice of noting the attendance each morning.

59.     On or about November 20, 2004, defendant Weiss issued a disciplinary letter to plaintiff's file concerning her alleged lateness as a result of his inaccurate monitoring.

60.     Upon information and belief, plaintiff was the only teacher in the Department who received a disciplinary letter in her file concerning defendant Weiss' incorrect conclusions as to when they were late to class.

61.     At the conclusion of the Fall semester, preference sheets were distributed to the teachers. These sheets allow teachers to mark down their class preferences for the following term.

62.     Plaintiff completed her preference form and attached a memorandum in which she specifically requested advanced and honors classes in Life Science, Chemistry. Plaintiff additionally requested not to be given special education classes.

116919

63.    Despite plaintiff's request, plaintiff was assigned a schedule consisting of all Special

Education classes. Plaintiff was assigned this schedule notwithstanding that these classes

were outside her license area and she had practically no experience teaching special

education students.

64.    Additionally, all but one of the classes assigned to plaintiff for the Spring term were

classes where the students had failed the class the year before and were re-taking the class

(referred to as a "repeater class").

65.    Upon information and belief, pursuant to his duties as Assistant Principal of

Organization, defendant Nissen in conjunction with defendant Messineo assigned

plaintiff her schedule.

66.    Further, at the commencement of the school year, plaintiff had spoken to defendant

Nissen and advised him of an arthritic condition which she suffers from. Plaintiff

requested that if possible, she be scheduled in classrooms near one another so as to limit

her walking from class to class, as well as access to a file cabinet near these classrooms.

Plaintiff was given classrooms in somewhat close proximity during the Fall semester,

however, during the Spring semester her first period class and her second period class

were assigned to classrooms three corridors apart.

67.    Upon information and belief, other younger teachers received classrooms in better

proximity to each other so as to easily get from one class to another and many teachers

were assigned to one classroom thereby giving them better access to their teaching

materials.

116919

68.   When plaintiff asked defendant Nissen for her classroom assignments to be changed so

that they were closer together as they were the semester before, defendant Nissen stated

that plaintiff would need to speak to defendant Weiss about it in that he was arranging the

classroom assignments that term.

69.   Not only did defendants ignore plaintiff's reasonable requests concerning the facilities,

defendant Messineo, who was aware of plaintiff's arthritic condition, made many

disparaging comments at staff meetings both in the Fall and Spring semesters, stating her

belief that a teacher must be able to stand the entire day in order to teach effectively.

70.   On or about March 14, 2005, defendants Weiss, Rav and Messineo conducted an

observation of Plaintiff in a repeater class and Weiss issued a report related to that

observation on or about March 29, 2005. Defendants chose to observe plaintiff in a

repeater class, which they knew or should have known disadvantaged plaintiff. Further,

defendants chose to observe plaintiff in a class in which they new she would be reviewing

a test students had taken the day before.  Despite the fact that only two students were

present and that plaintiff was reviewing a test, defendants continued with the observation.

71.   Moreover, defendant Weiss' statement in his March 29, 2005 observation report to

plaintiff stating "you should reconsider your role as an educator" and that if plaintiff did

not decide to alleviate her deficiencies she will "continue to receive unsatisfactory ratings

and ultimate discontinuance from service", further demonstrates defendants' intent to use

the evaluation process to force plaintiff out of Brandeis.

72.   Plaintiff submitted a written rebuttal to the observation report related to the March 18,

2005 observation, for inclusion in plaintiff's personnel file.

116919

73.    Additionally, although Weiss' falsely noted otherwise in his observation report, defendant Weiss never held a pre-observation conference with plaintiff, which Weiss knew or should have known disadvantaged plaintiff.  In fact, while some of the items Weiss falsely stated in his report were discussed at a pre-observation conference may have been mentioned in passing to plaintiff during defendant his walk-through observations, an actual meeting where the lesson to be observed on March 14, 2005 was discussed was never held.

74.    On or about May 25, 2005, a Regional Representative for the Department, Sheldon Young, observed plaintiff in one of the repeater classes. Both Young and defendant Messineo knew or should have known that having Young observe the repeater class disadvantaged plaintiff.  Additionally, Young's statement in his observation report that he reviewed the documents in plaintiff's file and concurred with defendant Messineo's decision to rate plaintiff's overall performance unsatisfactory, demonstrates that Young's observation was biased and solicited to corroborate Messineo's evaluation of plaintiff.

75.    Plaintiff submitted a written rebuttal to the observation report related to the May 25, 2005 observation, for inclusion in her personnel file.

76.    Neither defendant Messineo, defendant Weiss or Young ever observed plaintiff in the one non-repeater class that she was assigned that semester, a practice which they knew or should have known disadvantaged plaintiff in the evaluation process.

77.    On or about June 20, 2005, plaintiff distributed to her colleagues in their workplace mailboxes a memorandum which contained ideas and suggestions she had concerning ways to improve student performance.

78.   The next day, plaintiff was called to defendant Nissen's office and admonished for distributing the memorandum without defendant Messineo's prior approval.

79.   According to defendant Nissen, defendant Messineo had directed him to discipline plaintiff for her having distributed the memorandum without her prior approval.

80.   Although other teachers commonly distributed materials to other union members through use of the teacher's mailboxes, upon information and belief, these teachers did not obtain defendant Messineo's prior approval and were not disciplined for such conduct.

81.   Just one hour after this meeting with defendant Nissen, plaintiff received yet another letter, this one sent to her by defendant Weiss requesting another disciplinary meeting. At this meeting, defendant Weiss accused plaintiff of failing to properly proctor an English regents examination the week before claiming that plaintiff was seated while proctoring the exam and was using her laptop computer.

82.   Notwithstanding plaintiff's explanation and denial of wrongdoing, as well as the delay in discussing this with plaintiff, a disciplinary letter was placed in her file on or about June 22, 2005.  This disciplinary letter was yet another attempt to further antagonize plaintiff in the hope that such constant harassment would  push her to retire from her position.

83.   Throughout the school year, defendant Nissen continuously harassed plaintiff by questioning her as to when she intended on retiring and if she had submitted her retirement papers.

84.   On or about June 27, 2005, Plaintiff received an Unsatisfactory ("U") rating on the Annual Professional Performance Review issued by Messineo.

116919

85.     Despite the fact that plaintiff was qualified for per session opportunities (per hour work paid to teachers for after school or summer programs), plaintiff was denied these positions throughout the entire school year. These positions were regularly offered to younger teachers.

86.     For example, when asked for volunteers to teach make-up chemistry laboratory sessions, plaintiff volunteered. Plaintiff taught the first session of the make-up laboratory session and was then told the following week that she was not qualified for the position because she was not a licensed Chemistry teacher. When she advised the administration that she holds a Chemistry license, she was then told that she would not be able to continue in the position because she was not appointed as a Chemistry teacher. Upon information and belief, the Earth Science make-up laboratory sessions were taught by teachers who were not licensed, nor appointed, in Earth Science.

87.     The teachers allowed to remain in the per session positions were younger than plaintiff.

88.     Plaintiff was not offered any other per session positions, notwithstanding that she was available and qualified for these positions.

89.     Towards the end of Spring 2005, plaintiff again submitted a preference sheet in which she requested general education, non special education, advanced classes.

90.     To her dismay, plaintiff again received all Special Education classes again for the Fall of 2005, many of which contained emotionally disturbed students. Additionally, out of her entire schedule, only one of these classes was a non-repeater classes.

116919

91.     Upon information and belief, no other teacher outside of the special education department received a schedule consisting of all special education classes, with several classes contained emotionally disturbed students.

92.     Upon information and belief, Messineo assigned plaintiff's schedule for that following semester.

<u>SCHOOL YEAR 2005/2006</u>

93.     Defendant Messineo continued to deny plaintiff per session opportunities during the 2005/2006 school year. For example, in the Fall of 2004, defendant Messineo coordinated a "twilight school" program in which students were given the opportunity to earn extra credits in the evenings after school.  Plaintiff and other teachers received a letter inviting them to participate in this program, yet when plaintiff expressed her interest, she was ignored. Upon information and belief, younger and less senior teachers were offered positions in this program.

94.     On or about January 18, 2006, defendant LoPiccolo[1] conducted an observation of plaintiff.  LoPiccolo, observed plaintiff several days after the class had completed the final examination and right before the students in that class were to have a vacation week. Both LoPiccolo and defendant Messineo knew or should have known that this timing disadvantaged plaintiff.

---

[1]Defendant Assistant Principal LoPiccolo was hired on or about September 2005 to replace defendant Weiss who had transferred to a teaching position in a different school.

95.     Additionally, defendant LoPiccolo did not hold a pre-hearing conference as is required by the CBA between the Department and the UFT, which defendant LoPiccolo knew or should have known disadvantaged plaintiff.

96.     Plaintiff submitted a written rebuttal to the observation report relating to the January 18, 2006 observation for inclusion in plaintiff's personnel file.

97.     Additionally, throughout this school year, Mr. Carl Rav, a retired assistant principal and mentor to defendant LoPiccolo, participated in the post-observation conferences conducted by LoPiccolo. At these conferences, Rav questioned plaintiff as to when she intended on retiring.

98.     Further, defendant Nissen's questioning of plaintiff as to plaintiff's intentions on retiring increased during this school year.

99.     In the Spring of 2006, plaintiff was assigned a schedule consisting of classes containing mostly lower functioning students, many of which had failed the classes the prior years.

100.    Additionally, plaintiff's third period class was mostly comprised of repeater students with severe disciplinary problems, many of which had failed the class two or three times before.  In fact, Plaintiff requested assistance from the Deans numerous times that semester due to the severe behavioral and disciplinary problems of the students in this third period class. Still, her calls for assistance were denied.  Moreover, a peer intervener, Peter Lehrer, who was assigned to assist plaintiff, was unable to control this third period class and complained to defendant LoPiccolo about the student make up of the class.

101.    Upon information and belief, pursuant to his duties as Assistant Principal, defendant LoPiccolo assigned plaintiff her schedule.

102.    On or about March 3, 2006, LoPiccolo observed plaintiff in a class period that was a laboratory period.  This period was therefore not a recitation period that would foster the same type of evaluation.  Defendant LoPiccolo knew or should have know that choosing this period for an observation disadvantaged plaintiff.

103.    Further, defendant LoPiccolo never held a per-hearing conference in which the lesson that was to be observed on March 3, 2006 was discussed, which defendant LoPiccolo knew or should have known disadvantaged plaintiff.

104.    On or about March 27, 2006, defendant Messineo and defendant LoPiccolo observed plaintiff in the third period  class, the class which contained students with severe disciplinary problems.  Moreover, plaintiff was absent the day before, an absence which was noticed to the administration in advance. Defendant Messineo and defendant LoPiccolo knew or should have known that choosing this period to evaluate plaintiff disadvantaged plaintiff.  Further, Messineo did not ever observe plaintiff in any of the other classes, instead choosing to observe plaintiff only in the third period class.

105.    Neither defendant Messineo nor defendant LoPiccolo, held a pre-hearing conference relating to this March 27, 2006 observation, which they knew or should have known disadvantaged plaintiff.

106.    Further, on May 17, 2006, Superintendent Representative Sheldon Young was again called in, upon information and belief, at the request of the principal to observe plaintiff. Plaintiff's third period class was again chosen for the observation, which defendant Messineo knew or should have known disadvantaged plaintiff.

116919

107.    Additionally, Young's notation in his observation report that he concurred with defendant
        Messineo's overall rating of plaintiff's performance as unsatisfactory, as with his
        observation the year before, demonstrates that Young's observation was biased and
        solicited so as to corroborate Messineo's evaluation of plaintiff.

108.    Also, plaintiff was further improperly disciplined on or about May 25, 2006 when
        defendant LoPiccolo issued a disciplinary letter to plaintiff's file falsely accusing plaintiff
        of failing to supervise her students. This letter alleges that on two separate occasions, one
        in March and one in May, plaintiff's failure to supervise her students led to a classroom
        being flooded. Incredibly, upon information and belief, at the time of the May incident,
        plaintiff was not even in the classroom with the students.  It was another teacher who was
        present in the classroom and upon information and belief, this teacher was not disciplined
        for that incident.

109.    On or about June 28, 2006, defendant Messineo issued Plaintiff an overall U rating on her
        Annual Professional Performance Review.

<u>SCHOOL YEAR 2006/2007</u>

110.    On or about August 31, 2006, plaintiff reported back to Brandeis for service. Plaintiff was
        questioned by defendant Nissen that day as to whether or not she had received notice to
        report to the Regional Operations Center. Plaintiff advised Nissen that she did not receive
        any notification as to where to report but had received a letter in August from the
        Department's legal services unit advising her of an investigation. Plaintiff was excused by
        defendant Nissen and asked to leave the school.

116919

111.   On September 1, 2006, plaintiff was instructed to report to the Regional Operations Center on that following Tuesday after the Labor Day weekend where she would await disciplinary charges.

112.   Plaintiff reported to the Regional Operations Center as instructed yet received no information concerning her status teaching that school year until on or about December 16, 2006, when she was served with disciplinary charges seeking plaintiff's termination from her position.[2]

113.   Plaintiff's position was filled by a younger teacher who upon information and belief, was in her twenties.

114.   During the 2004/2005 and 2005/2006 school years, defendants have treated plaintiff less favorably than younger teachers, created a hostile and intimidating work environment for plaintiff because of her age and retaliated against plaintiff for her opposition to age discrimination by their actions set forth in the preceding paragraphs.

115.   Upon information and belief, at various times during the period of in or about August 2004 through the present, defendants have subject plaintiff to a more onerous schedule than other teachers, subjected plaintiff to unreasonable performance standards, sabotaged plaintiff's classroom observations, all because of her age and in retaliation for plaintiff's opposition to age discrimination.

116.   Upon information and belief, defendants did not subject younger teachers to the harassment and discrimination to which plaintiff was subjected during the period in or about August 2004 through the present.

_____

[2]A hearing concerning these charges pursuant to *Education Law* §3020-a is pending.

117.  The actions of defendants as aforesaid have been and are continuous in nature,
constituting a continuing wrong.

118.  During the period of August 2004 through the present, plaintiff has opposed defendants'
discrimination against her because of age in various ways, *inter alia*, by filing a charge of
age discrimination with the EEOC, by opposing the unfair and abusive use of the teacher
evaluation process, by opposing and contesting the disciplinary charges brought against
her, and by opposing the other unfair treatment perpetrated by defendants.

119.  The aforesaid actions of defendants, i.e., harassment, creation of a hostile and
intimidating work environment, refusal to hire plaintiff to summer school positions,
subjection of plaintiff to unfair and abusive evaluation tactics, initiation of disciplinary
charges in which plaintiff's termination is sought, and humiliating treatment in
connection with those disciplinary charges, were all undertaken in order to force her to
separate from employment and/or retire earlier than she would otherwise wish to, and
because of the plaintiff's age, and/or because she opposed defendants' illegal acts of age
discrimination, and upon information and belief, such actions were not taken against
younger teachers.

120.  Plaintiff's age and her opposition to defendants' acts of age discrimination were
motivating factors in defendants' treatment of plaintiff, and defendants' use of and
reliance upon the teacher evaluation and teacher improvement process in criticizing
plaintiff's performance, was a pretext for discrimination and retaliation.

121.  All of defendants' acts of discrimination and retaliation were willful and intentional.

116919

122.    Because of defendants' unlawful actions, plaintiff has suffered lost wages plus interest for

per session work in the 2004/2005, 2005/2006, 2006/2007, and 2007/2008 school years,

and has been harmed physically and emotionally.

123.    On or about December 11, 2007, the EEOC issued a Notice of Right to Sue to plaintiff,

which notice was received by plaintiff on or about December 12, 2007.

124.    Following the EEOC issuing the Notice of Right to Sue letter, plaintiff served the initial

Complaint, dated March 10, 2008, on the named Defendants.

125.    Defendant Weiss was served with the Complaint on March 27, 2008.

126.    The remaining defendants were each served on March 28, 2008.

127.    On March 28, 2008, while at her assigned location, and just one day after defendant

Weiss was served, plaintiff was personally served a letter, signed by defendant Messineo.

128.    This letter advised plaintiff that she would be retroactively "docked for time not served at

[her] reassignment center."

129.    In choosing to dock plaintiff, defendant Messineo concluded that the time was "not

approved and...not permitted" and also threatened plaintiff with "further disciplinary

action."

130.    This unilateral decision to deduct monies from plaintiff's wages was made in direct

retaliation for having served the above-referenced complaint.

131.    Further, Plaintiff was summoned to a meeting, to be held on April 8, 2008 at 8:00 a.m.,

with defendant Messineo.

132.    Upon information and belief, this disciplinary meeting was scheduled to further address

plaintiff's alleged unauthorized absences from her assignment.

116919

133.    For unexplained reasons, this meeting was abruptly cancelled by Defendants' counsel and

has yet to be rescheduled.

134.    This meeting was scheduled to intimidate plaintiff and in retaliation for her having

asserted her lawful rights.

<u>FIRST CLAIM</u>
<u>Pursuant to ADEA, 29 U.S.C. §621 *et seq.*</u>

135.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1

through 123 of the complaint with the same force and effect as though fully set forth

herein.

136.    Plaintiff is protected by the provisions of the ADEA.

137.    The aforesaid actions of defendants in harassing plaintiff, creating a hostile work

environment, refusing to hire plaintiff for per session positions, subjecting plaintiff to

unfair and abusive evaluation tactics, initiating disciplinary charges seeking plaintiff's

termination, were all undertaken to attempt to force plaintiff to retire earlier than she

would otherwise wish to, and were undertaken because of the plaintiff's age and/or

because she opposed defendants' illegal acts of age discrimination, all in violation of the

ADEA.

138.    All of defendants' acts of discrimination and retaliation in violation of the ADEA, were

willful and intentional.

139.    Plaintiff has satisfied all of the procedural and administrative prerequisites to suit as set

forth in 29 U.S.C. §§626(d) and 633(b).

116919

140.    As a result of the defendants' discrimination and retaliation against plaintiff on the basis

of her age and opposition to age discrimination, plaintiff has suffered lost wages for per-

session work plus interest and consequential reduction of pension benefits.

## SECOND CLAIM
### Pursuant to N.Y. State Human Rights Law

141.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1

through 123 of the complaint with the same force and effect as though fully set forth

herein.

142.    Defendants' acts of discrimination and retaliation constitute an unlawful discriminatory

practice within the meaning of Section 296 of the Human Rights Law.

143.    As a result of the defendants' discriminatory acts, plaintiff has suffered lost wages for per

session work plus interest, and consequential reduction of pension benefits, and has

suffered, continues to suffer, and will in the future suffer extreme embarrassment,

humiliation, mental anguish, emotional distress, pain and suffering, and other non-

pecuniary losses.

## THIRD CLAIM
### Pursuant to N.Y. City Human Rights Law

144.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1

through 123 of the complaint with the same force and effect as though fully set forth

herein.

145.    Defendants' acts of discrimination and retaliation constitute an unlawful discriminatory

practice within the meaning of Section 8-101 *et. seq.* of the New York City

Administrative Code.

116919

146.    As a result of the defendants' discriminatory acts, plaintiff has suffered lost wages for per

session work plus interest and consequential reduction of pension benefits, and has

suffered, continues to suffer, and will in the future suffer extreme embarrassment,

humiliation, mental anguish, emotional distress, pain and suffering, and other non-

pecuniary losses.

FOURTH CLAIM
Pursuant to 42 U.S.C. §1983 (Equal Protection)

147.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1

through 123 of the complaint with the same force and effect as though fully set forth

herein.

148.    Denial of per session employment, creation of a hostile work environment, and

discrimination in the terms and conditions of public employment on the basis of age, as

well as retaliation for opposing discriminatory practices, by state actors, amount to a

violation of the right to equal protection of the laws, as guaranteed by the 14th

Amendment to the U.S. Constitution.

149.    Defendants Messineo, Weiss, Nissen and LoPiccolo have intentionally and invidiously

discriminated against plaintiff with respect to her public employment because of her age

and to retaliate against her for opposing age discrimination.

150.    Defendants Messineo, Weiss, Nissen and LoPiccolo participated directly in the violation

of plaintiff's constitutional rights.

151.    Defendants Messineo, Weiss, Nissen and LoPiccolo failed to remedy the violation of

plaintiff's constitutional rights after being informed of it and/or created a policy or

custom under which the unconstitutional practices occurred or allowed the continuance of

116919

such policy or custom and/or were grossly negligent in supervising subordinates who committed the wrongful acts and/or exhibited deliberate indifference by failing to act on information indicating that unconstitutional acts were occurring.

152.  The discriminatory actions of the defendants were part of the policy or custom of the defendants, and were reviewed by and adopted by the defendants Department of Education, by virtue of their initiation of disciplinary charges against plaintiff on or about December 12, 2006 and other acts.

153.  By their actions, defendants have intentionally deprived plaintiff of valuable rights in public employment based on unlawful and discriminatory motives of age and retaliation.

154.  All of defendants' actions were taken under color of State law.

155.  Defendants by their actions have violated plaintiff's right to equal protection of the laws as provided by the 14th Amendment to the U.S. Constitution.

156.  Because of defendants' intentional acts, plaintiff has suffered lost wages for per session work and consequential reduction of pension benefits, and has suffered, continues to suffer, and will in the future suffer extreme embarrassment, humiliation, mental anguish, emotional distress, pain and suffering, and other non-pecuniary losses.

157.  Defendants have acted with malicious intent and/or with reckless or callous indifference to plaintiff's federally protected rights, entitling plaintiff to punitive damages.

116919

WHEREFORE, plaintiff respectfully requests that this Court:

(1)     adjudge and decree that defendants have violated the ADEA, 29 U.S.C. §§ 621 *et seq.* and have done so willfully, that defendants have violated the State Human Rights Law, the City Human Rights Law and that defendants have violated 42 U.S.C. §1983;

(2)     award plaintiff appropriate back pay and pension adjustment, an equal sum as liquidated damages and pre-judgment interest in amounts to be proved at trial, arising from the denial of per session work;

(3)     award compensatory damages for past and future extreme embarrassment, humiliation, mental anguish, pain and suffering, emotional distress, and other non-pecuniary losses arising from defendants' violation of plaintiffs' rights under the New York State Human Rights Law and New York City Human Rights Law in an amount to be determined at trial;

(4)     award compensatory damages for past and future extreme embarrassment, humiliation, mental anguish, pain and suffering, emotional distress, and other non-pecuniary losses arising from defendants' violation of plaintiffs' rights to Equal Protection under the U.S. Constitution, in an amount to be determined at the time of trial;

(5)     award punitive damages arising from the violation of 42 U.S.C. §1983 by defendants Messineo, Weiss, Nissen and LoPiccolo individually, in an amount to be determined at trial;

(6)     award plaintiff the costs of this action, together with reasonable attorney's fees, as provided by the ADEA, 29 U.S.C. §626(b) and by incorporation, 29 U.S.C. §616(b), and as provided by 42 U.S.C. §1988; and

116919

      (7)    grant plaintiff such additional equitable and legal relief as the Court deems just and proper in the circumstances.

Dated:  New York, New York
         May 27, 2008

                                  JAMES R. SANDNER
                                  Attorney for Plaintiff
                                  Office & P.O. Address
                                  52 Broadway, 9th Floor

             By:    _____
                                  Wendy M. Star (WG 1217)
                                  Damon S. Levenstien (DL8110)
                                  Of Counsel

116919